| Year | Front Pay | Interest | Total |
|------|-----------|----------|-------|
| 1981 | 36,256.00 | 36,981.12 | 73,237.12 |
| 1982 | 39,882.00 | 35,893.80 | 75,775.80 |
| 1983 | 43,870.00 | 32,902.50 | 76,772.50 |
| 1984 | 48,257.00 | 28,954.21 | 77,211.21 |
| 1985 | 53,082.00 | 23,886.90 | 76,968.90 |
| 1986 | 58,391.00 | 17,517.30 | 75,908.30 |
| 1987 | 64,230.00 | 12,524.85 | 76,754.85 |
| 1988 | 70,653.00 | 7,065.30 | 77,718.30 |
| 1989 | 38,859.00 | 1,942.95 | 40,801.95 |

Rita F. MATHIS, Plaintiff,

v.

BOEING MILITARY AIRPLANE
COMPANY, Defendant.

No. 86–6002–K.

United States District Court,
D. Kansas.

July 19, 1989.

Susan Selvidge, Fleeson, Gooing, Coulson & Kitch, Wichita, Kan., for plaintiff.

Foulston, Siefkin, Powers & Eberhardt, Wichita, Kan., for defendant.

## MEMORANDUM AND ORDER

PATRICK F. KELLY, District Judge.

Plaintiff Rita F. Mathis, a black woman, brought this action pursuant to 42 U.S.C. § 1981 and 42 U.S.C. § 2000e *et seq.* (Title VII). Plaintiff alleges that defendant Boeing Military Airplane Company ("Boeing") discriminated against her on the basis of race and sex. Specifically, plaintiff alleges such discrimination as to the terms and conditions of her employment. Plaintiff further alleges retaliatory discharge for claiming such discrimination. This case is now before the court on the defendant's motion for summary judgment.

The court heard oral argument on defendant's motion on June 26, 1989, and announced its ruling at that time. Consistent with its statements at the hearing and for the reasons set forth herein, the court grants defendant's motion for summary judgment.

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In considering a motion for summary judgment, this court must examine all evidence in a light most favorable to the opposing party. *McKenzie v. Mercy Hosp.,* 854 F.2d 365, 367 (10th Cir.1988). Further, the party moving for summary judgment must demonstrate its entitlement beyond a reasonable doubt. *Ellis v. El Paso Natural Gas Co.,* 754 F.2d 884, 885 (10th Cir. 1985). However, the moving party need not disprove plaintiff's claim, but rather, must only establish that the factual allegations have no legal significance. *Dayton Hudson Corp. v. Macerich Real Estate Co.,* 812 F.2d 1319, 1323 (10th Cir.1987).

Once the moving party has carried its burden under Rule 56(c), the party opposing summary judgment must do more than simply show there is some metaphysical doubt as to the material facts. "In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1988) (quoting Fed.R.Civ.P. 56(e)). One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and the rule should be interpreted in a way that allows it to accomplish this purpose. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1988).

### Findings of Fact

The plaintiff, Rita Mathis, was employed by the Internal Revenue Service in Oklahoma City, Oklahoma, as a clerk-typist from January 5, 1982 to June 25, 1982. She resigned this position in lieu of being placed on indefinite suspension. On July 15, 1982, plaintiff pleaded guilty to a charge that she devised a scheme to defraud the Oklahoma Department of Human Services.[1]

From July 28, 1982 to May 2, 1983, plaintiff worked for three different federal agencies in the Oklahoma City area. She was terminated for cause by all three agen-

---

1. On September 2, 1982, plaintiff was placed on a three-year probation and made restitution of $282.00.

cies. It appears that plaintiff did not seek any other employment until she completed an employment application with Boeing in Wichita on February 17, 1984. In completing the application procedure, the plaintiff provided Boeing with a lengthy resume containing her employment history. Plaintiff, however, did not reveal her employment history with the four federal agencies. Additionally, the plaintiff did not reveal her prior felony conviction for fraud.[2]

Plaintiff's employment with defendant as a clerk-typist began on January 31, 1985. The plaintiff transferred to the shipping department on July 8, 1985. The record indicates that the plaintiff was five months pregnant during the month of November, 1985 and was placed on maternity leave on November 18, 1985.

Upon her return to work on June 2, 1986, plaintiff filed a discrimination complaint with the Kansas Commission on Civil Rights and Equal Employment Opportunity Commission ("EEOC"). The majority of plaintiff's allegations of racial and sexual harassment occurred between the date of her transfer and November 18, 1985. Plaintiff received her right to sue letter from the EEOC on September 29, 1986. Pursuant to this letter, the plaintiff instituted the present action on December 24, 1986.

On October 7, 1987, plaintiff was terminated for failure to maintain acceptable attendance. Thereafter, plaintiff died on November 11, 1988. Darrel Buckner, guardian and conservator of plaintiff's four children and administrator of her estate, has been substituted as plaintiff herein.

*Discussion*

Defendant moves for summary judgment on several grounds. Initially, defendant contends that plaintiff's claims under 42 U.S.C. § 1981 and Title VII should be dismissed pursuant to the recent Tenth Circuit

decision in *Summers v. State Farm Mut. Auto. Ins. Co.*, 864 F.2d 700 (10th Cir. 1988). In the alternative, defendant argues that plaintiff's § 1981 claim should be dismissed because it did not survive plaintiff's death.

### I.  *42 U.S.C. § 1981*

■ The thrust of plaintiff's § 1981[3] claim is that she was discriminated against as to the terms and conditions of her employment between July 8, 1985 and November 18, 1985. In support, plaintiff alleges that she was harassed by her co-workers and supervisors. More specifically, plaintiff alleges that co-workers made comments and jokes about her race and kinky hair, and that plaintiff was required to rewrap a properly wrapped package three times. Plaintiff further alleges that she was denied overtime pay because of her race. The defendant has consistently denied such allegations. Moreover, the defendant has maintained that plaintiff's § 1981 claim does not survive her death.

Both parties have extensively briefed the issue of whether plaintiff's claim survives her death. The court, however, does not reach this issue, as the recent case of *Patterson v. McLean Credit Union*, —— U.S. ——, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), mandates dismissal of plaintiff's § 1981 claim.

In *Patterson*, the plaintiff brought a § 1981 action alleging racial harassment in the form of racial slurs, excessive work load, and assignment of demeaning tasks. The district court held that a racial harassment claim is not actionable under § 1981. In affirming the district court, the Fourth Circuit Court of Appeals reasoned that the right to "make" and "enforce" contracts was not abridged by racial harassment. 109 S.Ct. at 2369.

The Supreme Court affirmed, holding that "racial harassment relating to the con-

---

2. These omissions were discovered by the defendant in December, 1988. Defendant additionally discovered that from the date of her application to the date of her hiring, plaintiff was employed and terminated for poor performance by four Wichita employers.

3. Section 1981 provides in pertinent part that "[a]ll persons ... shall have the right ... to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property...."

ditions of employment is not actionable under § 1981 because that provision does not apply to conduct which occurs after the formation of a contract and which does not interfere with the right to enforce established contract obligations." *Id.*

The *Patterson* court observed that conduct relating to terms and conditions of employment is actionable under the more "expansive reach" of Title VII. 109 S.Ct. at 2375. The Court, noted, however, that in some instances the two statutes (§ 1981 and Title VII) may overlap, such as when a defendant has refused to enter into an employment contract on the basis of race. *Id.*

In light of the foregoing, the court grants summary judgment as to plaintiff's § 1981 claim of racial harassment and discrimination.

## II. *Title VII*

The plaintiff's petition contains a claim of both racial and sexual discrimination under Title VII. Plaintiff's Title VII claim of racial discrimination arises primarily from the same incidents as her § 1981 claim. As to her claim of sexual discrimination, plaintiff alleges that she was forced to take an involuntary maternity leave. Plaintiff further alleges sexual discrimination through the defendant's failure to consider reasonable alternatives to placing her on involuntary maternity leave. Moreover, plaintiff alleges that she was subjected to a consistent pattern of racial and sexual discrimination by the defendant.

The defendant denies the existence of racial and sexual discrimination. Moreover, defendant argues that even if plaintiff was discriminated against, summary judgment is proper under the recent Tenth Circuit decision in *Summers v. State Farm Mut. Auto. Ins. Co.*, 864 F.2d 700 (10th Cir.1988).

In *Summers,* the employee claimed age and religious discrimination under Title VII and the Age Discrimination in Employment Act. The employee was placed on probation for two known falsifications of insurance claims records. The employee was later discharged for poor performance. Approximately four years after plaintiff's discharge, the employer discovered 150 fal-

sifications of company records made by the plaintiff during his employment with defendant. The employer argued that the 150 falsifications, unknown at the time of dismissal, should be considered in determining the remedy available to the employee. The employee argued that such falsifications were irrelevant and inadmissible. 864 F.2d at 704.

The *Summers* court, however, reasoned that "while such after-acquired evidence cannot be said to have been a 'cause' for Summers' discharge in 1982, it is relevant to Summers' claim of 'injury,' and does itself preclude the grant of any present relief or remedy to Summers." 864 F.2d at 708.

In the present case, defendant argues that plaintiff would not have been hired had she given full and complete information regarding her employment history and felony conviction in Oklahoma. Defendant further contends that it has consistently terminated employees for such falsifications. Thus, even in the presence of racial and sexual discrimination or retaliation, under *Summers,* defendant argues it cannot be liable.

Plaintiff attempts to distinguish *Summers* on several grounds. Initially, plaintiff argues that there is evidence of discrimination in the present case, whereas no such evidence existed in *Summers.* While this may be true, the *Summers* court specifically *assumed* that the employee was dismissed in part due to his age and religion. 864 F.2d at 708. As such, plaintiff's attempts to show sexual and racial discrimination are immaterial.

The core of plaintiff's argument is that plaintiff's failure to provide complete information on the employment application does not rise to the level of wrongdoing in *Summers.* Plaintiff notes that there were 150 falsifications in *Summers* as opposed to only a few in the present case. Plaintiff further asserts that a strict application of the *Summers* holding could lead to extreme results.

In the instant case, material omissions were made by plaintiff on the employment application. They were material for the simple reason that defendant relied upon

such omissions in hiring plaintiff. Additionally, the obvious difference in the number of falsifications has little impact on the level of wrongdoing in the present case. In *Summers,* the 150 falsifications were directly related to the employee's work. By the same token, plaintiff's omission of her unfavorable work record is directly related to her employment.

It appears that the instant case falls squarely within the holding of *Summers* and precludes a grant of relief to plaintiff under Title VII. While the court agrees with plaintiff that in some cases a strict application of *Summers* may lead to extreme results, this is not such a case. Moreover, this court is not at liberty to modify or limit the Tenth Circuit's ruling in *Summers.*

Accordingly, the court finds that no genuine issues of material fact exist and defendant is entitled to judgment as a matter of law.

IT IS THEREFORE ORDERED this 19 day of July, 1989, that defendant's motion for summary judgment is granted.