**Isaac L. PUNAHELE, Plaintiff,**

v.

**UNITED AIR LINES, INC., a Delaware corporation, Defendant.**

**Civ. A. No. 89–B–1087.**

United States District Court,
D. Colorado.

Jan. 24, 1991.

Barry D. Roseman, Denver, Colo., for plaintiff.

Michael D. Nosler, Frances B. McDonald, Rothgerber, Appel, Powers & Johnson, Denver, Colo., for defendant.

## MEMORANDUM OPINION AND ORDER

BABCOCK, District Judge.

Hearing was held on three motions filed by United Air Lines, Inc. (United) for summary judgment and a motion filed by United for a bifurcated trial in which Punahele joined conditionally. Because I conclude that plaintiff Isaac L. Punahele (Punahele) has shown that there are genuine issues of material fact as to each of the motions, I

deny summary judgment. Additionally, because the condition on which Punahele agreed to join in the bifurcation motion has been met, both parties ask me for a bifurcated trial. Accordingly, I grant the motion to bifurcate.

This dispute arises from United's refusal to hire Punahele as a ramp service employee. Punahele contends that United's decision was based on Punahele's age in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–634. Punahele's claim under the Airline Deregulation Act of 1978, 49 U.S.C.App. § 1552(d)(1), was dismissed previously. *Punahele v. United Air Lines, Inc.*, 743 F.Supp. 758 (D.Colo.1990).

There are three burden shifting steps in an age discrimination case. First, to establish a prima facie case of age discrimination, Punahele must show that: (1) he was within a protected age group; (2) he applied for a job for which United was seeking applications; (3) he was qualified for the position; (4) he was rejected despite his qualifications; (5) after his rejection, the position remained open; and (6) United continued to seek applications from persons of his qualification. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); *Cooper v. Asplundh Tree Expert Co.*, 836 F.2d 1544, 1547 n. 1 (10th Cir.1988) (applying *Green* to ADEA claim). Second, if Punahele succeeds in establishing a prima facie case, the burden of production then shifts to United to show a legitimate, nondiscriminatory reason for its refusal to hire Punahele. *McDonnell Douglas, Corp.*, 411 U.S. at 802, 93 S.Ct. at 1824; *Cooper*, 836 F.2d at 1547. Third, Punahele "retains the ultimate burden of persuasion, which he may carry directly by proving that age was more likely than not a determinative factor in the employment decision, or indirectly by establishing that the employer's proffered explanation is mere pretext." *Cooper*, 836 F.2d at 1547.

■ United argues in three motions that summary judgment should issue on Punahele's age discrimination claim. Federal Rule of Civil Procedure 56 provides that summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Summary judgment is appropriate against the party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In order to dispute the facts demonstrated by the evidence of the movant, the nonmovant must also offer evidence and cannot rely on conclusory allegations. *Lujan v. National Wildlife Fed'n*, —— U.S. ——, ——, 110 S.Ct. 3177, 3188, 111 L.Ed.2d 695, 716 (1990); *R–G Denver, Ltd. v. First City Holdings*, 789 F.2d 1469, 1471 (10th Cir. 1986).

## I. UNITED'S FIRST MOTION FOR SUMMARY JUDGMENT: AGE AS A DETERMINATIVE FACTOR

■ United is correct that Punahele must show that "age made a difference" in United's decision not to hire Punahele in order to recover. *Cooper*, 836 F.2d at 1547 (quoting *Perrell v. FinanceAmerica Corp.*, 726 F.2d 654, 656 (10th Cir.1984)). United asserts that Punahele cannot rely solely on his "broad general statements that he has been discriminated against because of his age."

In response to the motion, however, Punahele provides more than his own speculative opinion that United's decision was based on Punahele's age. For example, Punahele summarized employment applications submitted to United for the position Punahele was seeking. The summary shows that after Punahele submitted his application for employment, United hired at least thirty-eight persons who were younger than Punahele and had less experience than Punahele, or no experience at all in the position for which Punahele applied. This establishes a jury question whether

Punahele's age was a determinative factor in United's employment decision.

## II. United's Second Motion for Summary Judgment: Other Determinative Factor

■ In its second motion for summary judgment, United argues that, assuming Punahele established a prima facie case for age discrimination, United had a legitimate, nondiscriminatory reason for its refusal to hire Punahele. Specifically, United asserts that it was unable to verify Punahele's whereabouts for a nine month period during which his application was under consideration. Punahele concedes that United is required by regulations of the Federal Aviation Administration to verify an applicant's whereabouts and activities for a period of five years before the applicant applied to the airline. Pretrial Order at 6 ¶ 22. Punahele also concedes that the people he listed as references on his application could not verify his whereabouts or activities for nine months from June 1984 to February 1985. Pretrial Order at 6 ¶¶ 23–24.

The verification issue, however, is not so clear-cut as to warrant summary judgment. Punahele contends that he has satisfied his summary judgment burden by establishing that there is a genuine dispute as to whether United was unable to comply with the F.A.A. verification based on the information he supplied. Although he admits that the references provided in his application could not verify his whereabouts or activities during the nine-month period, Punahele establishes that he provided United with information on other forms which would allow United to comply with the F.A.A. rule. Specifically, Punahele provided United with a Fidelity Bond Application which contained additional references. Although, as a matter of law, United had no duty to consult Punahele's two-year old Fidelity Bond Application for additional references, Punahele nevertheless has shown a genuine issue of material fact whether the verification problem was the true motive for refusing to hire him. Punahele shows that before attempting to verify Punahele's whereabouts and activities, United began

hiring younger, less experienced applicants. Consequently, a jury should resolve the question of whether the alleged verification roadblock is pretextual.

## III. United's Third Motion for Summary Judgment: Injury

■ United contends that, assuming its refusal to hire was motivated by Punahele's age, Punahele was not injured and is not entitled to relief. United argues that Punahele failed to disclose information that, if known by United at the time it made its decision not to hire Punahele, would have lead United to refuse to hire Punahele. First, United argues that, even after being asked, Punahele failed to disclose his tardiness record from his previous employment with Pan American World Air Ways, Inc. (Pan Am). Second, United argues that Punahele failed to disclose on various forms and applications a prior felony conviction. The parties agree that Punahele failed to reveal the information and that one of United's qualifications for the service ramp position is dependability. Pretrial Order at 5 ¶¶ 11–14, 6 ¶ 19.

United moves for summary judgment arguing that *Summers v. State Farm Mut. Auto. Ins. Co.*, 864 F.2d 700 (10th Cir. 1988), controls here. Summers brought an action under Title VII and the ADEA claiming religious and age discrimination. State Farm had placed Summers on probation for two weeks because he had falsified records. Subsequently, State Farm fired Summers, stating as its reason Summers' poor job performance. Four years after the discharge, while preparing for trial, State Farm discovered that Summers had falsified over 150 records, 18 of which were falsified after his release from probationary status. Summers did not dispute the falsifications. *Id.* at 702–03. In moving for summary judgment, State Farm conceded that the newly discovered falsifications were not relevant to show that Summers was discharged for the falsifications, arguing instead that the "additional falsifications may, and should be, considered in determining what relief, or remedy, is

available to Summers." *Id.* at 704. The Tenth Circuit agreed:

> To argue, as Summers does, that this after-acquired evidence should be ignored is utterly unrealistic. [footnote omitted]. The present case is akin to the hypothetical wherein a company doctor is fired because of his age, race, religion, and sex and the company, in defending a civil rights action, thereafter discovers that the discharged employee was not a "doctor." In our view, the masquerading doctor would be entitled to no relief, and Summers is in no better position.

*Summers*, 864 F.2d at 708; *see also East Tex. Motor Freight Sys. v. Rodriguez*, 431 U.S. 395, 403 n. 9, 97 S.Ct. 1891, 1897 n. 9, 52 L.Ed.2d 453 (1977) (assuming discrimination, employer entitled to prove at trial that employee not injured because not qualified and would not have been hired in any event); *Mantolete v. Bolger*, 767 F.2d 1416, 1424 (9th Cir.1985); *Smallwood v. United Air Lines, Inc.*, 728 F.2d 614, 620 (4th Cir.), *cert. denied*, 469 U.S. 832, 105 S.Ct. 120, 83 L.Ed.2d 62 (1984); *Nanty v. Barrows Co.*, 660 F.2d 1327, 1333 (9th Cir.1981).

Punahele argues that *Summers* is no longer good law in light of *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). I disagree. Punahele misconstrues the holding in *Hopkins*, as relating to the *relief* to which a victim of forbidden discrimination in employment is entitled. *Hopkins*, however, dealt solely with the elements that constitute *liability* for forbidden employment discrimination. *Hopkins* indeed held that once a plaintiff shows that an impermissible factor played a motivating role in an employment decision, "the defendant may avoid a finding of liability [footnote omitted] only by proving that it would have made the same decision even if it had not allowed gender to play such a role." *Hopkins*, 490 U.S. at 244–45, 109 S.Ct. at 1787–88, 104 L.Ed.2d at 284.

This does not address the issue faced in *Summers* of whether Punahele was *injured* by the unlawful discrimination. In *Summers*, the Tenth Circuit assumed that State Farm's motive in discharging Summers was illegal in concluding that, although the "after-acquired evidence cannot be said to have been a 'cause' for Summers' discharge in 1982, it is relevant to Summers' claim of 'injury,' and does itself preclude the grant of any present relief or remedy to Summers." *Summers*, 864 F.2d at 708; *see Smith v. General Scanning, Inc.*, 876 F.2d 1315, 1319 n. 2 (7th Cir.1989)

Furthermore, because I am concerned with the appropriate remedy, rather than the cause of United's employment decision, the probability that the undisclosed information would not have been discovered absent this suit is immaterial. *Summers*, 864 F.2d at 707 n. 3. Consequently, *Summers* remains good law. The after-acquired evidence, Punahele's nondisclosures, is relevant in determining whether Punahele was injured by the assumed-discrimination and is subject to a summary judgment motion. *See Mathis v. Boeing Military Airplane Co.*, 719 F.Supp. 991, 994–95 (D.Kan.1989).

Punahele concedes that he failed to inform United of his tardiness record at Pan Am and his felony conviction. He does contend, however, that United never asked him for his tardiness record and that there is an issue of fact whether United would have refused to hire Punahele in the absence of the assumed-discrimination, and armed with the tardiness and prior felony information.

It is a defense that Punahele would not have been hired even absent discrimination. *Summers*, 864 F.2d at 707. United contends that it would not have hired Punahele had it known of his tardiness record. In support of this, United provides the affidavit of Bill Bojorques, Senior Employment Representative of United at the time of the challenged conduct. Bojorques averred that it was United's standard operating procedure to obtain the tardiness record of applicants before hiring. He further testified that if an applicant could not recall his tardiness record, Bojorques would obtain the information from Equifax, an employ-

ment record service. Finally, Bojorques testified that he did not request the information on Punahele's Pan Am tardiness record. From this, United contends that it is undisputed that Punahele was asked of his tardiness record and gave an answer that concealed the truth.

Punahele does not contend that United's standard operating procedures were different than as described by Bojorques. Rather, he contends that, as to his interview, the United representative did not ask him about his tardiness record and that even if they had they would not have acted differently. Punahele thus contends that there is a material question of fact as to how United would have treated him had they known of his record. To support this, Punahele provides his affidavit in which he testifies that he does not remember being asked of his tardiness record. He also states that had he been asked, he would have answered that he could not remember. Thus, Punahele contends that in his case a question of fact exists whether United followed its standard operating procedure.

He also provides evidence that even had United known of his record, they would not have acted differently. His Pan Am tardiness record was compiled during a period of tension between Pan Am and the employees' union and may not reflect accurately Punahele's dependability. Furthermore, during Punahele's temporary employment with United for three months, he compiled "100%" dependability and "outstanding" attendance records.

Evidence of a party's habit or routine practice is admissible to prove that that party acted on a particular occasion in conformance with the habit, practice or routine. Fed.R.Evid. 406. Such evidence, however, is not binding on the trier of fact and the trier of fact may give it such weight as the trier considers it deserves. On the showing made here, I conclude that whether United followed its procedures in this case or whether United would have refused to hire Punahele even if it followed its procedures is an issue for resolution by the jury.

Finally, Punahele shows that his felony conviction was based on a law later struck-down as unconstitutional and that his conviction was purged by a presidential pardon. Again, I conclude that whether the pardoned conviction would have made a difference in United's employment decision is a genuine issue of material fact.

IV. United's Motion to Bifurcate the Trial: Liability & Damages

United moves to bifurcate the trial, separating the issues of liability from damages. Fed.R.Civ.P. 42(b). Punahele joins the motion on the condition that I rule, under *Summers v. State Farm Mut. Auto. Ins. Co.*, 864 F.2d 700 (10th Cir.1988), that evidence regarding Punahele's undisclosed prior felony conviction and his tardiness record while employed with Pan Am may be admitted at trial. As a result of my ruling that the evidence is relevant as to the issue of appropriate relief, Punahele joins in the request for bifurcation. Both parties having stipulated to a bifurcated trial, I conclude separate trials are appropriate.

Accordingly, it is ORDERED THAT

(1) United Air Lines, Inc.'s Motion for Summary Judgment (Filed June 1, 1990) is DENIED;

(2) United Air Lines, Inc.'s Motion for Summary Judgment (Filed July 25, 1990) is DENIED;

(3) United Air Lines, Inc.'s Motion for Summary Judgment (Filed July 30, 1990) is DENIED;

(4) United Air Lines, Inc.'s Motion to Bifurcate the Issues of Liability and Damages at Trial (Filed September 26, 1990) is GRANTED.