Donna CHURCHMAN, Plaintiff,

v.

PINKERTON'S INC., a Delaware domestic corporation authorized to do business in Kansas; and Derby Refining Company, a Kansas corporation, Defendants.

No. 88–1624–C.

United States District Court, D. Kansas.

Jan. 29, 1991.

Timothy J. King, Stinson, Lasswell & Wilson, Wichita, Kan., for plaintiff.

Wyatt M. Wright, Foulston, Siefkin, Powers & Eberhardt, Wichita, Kan., for Derby Refining Co. defendant.

Susan P. Selvidge, Fleeson, Gooing, Coulson & Kitch, Wichita, Kan., for Pinkerton's Inc. defendant.

## MEMORANDUM AND ORDER

CROW, District Judge.

The case comes before the court on the defendants' separate motions for summary judgment on plaintiff's original complaint seeking relief under Title VII, 42 U.S.C. § 2000e *et seq.* and on defendants' separate motions to dismiss or, in the alternative, summary judgment on plaintiff's amended complaint asserting claims under Title VII and state common law. Plaintiff, Donna Churchman, was hired as a security guard by Pinkerton's Inc. ("Pinkerton's") on or about September 1, 1985. Pinkerton's later assigned her to a security position with Derby Refining Company ("Derby").

Plaintiff filed this action on October 26, 1988, alleging sexual harassment by a Derby employee and constructive discharge by Pinkerton's as a result of her being a woman and her reporting of the sexual harassment. On leave of the court, plaintiff filed an amended complaint adding one claim for breach of contract against defendant Pinkerton's and two claims—negligent retention of an employee and intentional infliction of emotional distress—against defendant Derby.

Defendants seek summary judgment under the rationale of *Summers v. State Farm Mut. Auto. Ins. Co.*, 864 F.2d 700 (10th Cir.1988). Because plaintiff falsified her employment application, defendants insist that she would have never been hired had she answered truthfully the questions on the application and, in the alternative, that she would have been terminated upon discovery of the false answers.

A motion for summary judgment gives the judge an initial opportunity to assess the need for a trial. Without weighing the evidence or determining credibility, the court grants summary judgment when no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–252, 106 S.Ct. at 2511–12.

An issue of fact is "genuine" if the evidence is significantly probative or more than merely colorable such that a jury could reasonably return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. at 2510. An issue of fact is "material" if proof of it might affect the outcome of the lawsuit. 477 U.S. at 249, 106 S.Ct. at 2510. Factual inferences are drawn to favor the existence of triable issues, and where reasonable minds could ultimately reach different conclusions, summary judgment is inappropriate. *See Riley v. Brown & Root, Inc.*, 896 F.2d 474, 476–77 (10th Cir.1990).

The movant's initial burden under Fed.R. Civ.P. 56 is to show the absence of evidence to support the nonmoving party's case. *Windon Third Oil and Gas v. Federal Deposit Ins.*, 805 F.2d 342, 345 (10th Cir. 1986), *cert. denied*, 480 U.S. 947, 107 S.Ct. 1605, 94 L.Ed.2d 791 (1987). The movant must specify those portions of " 'the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits if any,' " which demonstrate the absence of a genuine issue of fact. *Windon*, 805 F.2d at 345 (quoting Fed.R.Civ.P. 56(c)). It may be sufficient for the movant to establish that the alleged factual issues are without legal significance. *Dayton Hudson Corp. v. Macerich Real Estate Co.*, 812 F.2d 1319, 1323 (10th Cir.1987).

The opposing party may not rest upon mere allegations or denials in the pleadings but must set forth specific facts supported by the kinds of evidentiary materials listed

in Rule 56(c). *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511. The evidence is deemed true and all reasonable inferences are drawn in his favor. *Windon*, 805 F.2d at 346. More than a "disfavored procedural shortcut," summary judgment is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.' Fed.R.Civ.P. 1." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986).

Plaintiff failed to comply with D.Kan. Rule 206 and Rule 56 of the Federal Rules of Civil Procedure in attempting to controvert a number of the defendants' statements of fact. Plaintiff simply responded that the paragraphs were controverted and cited to his accompanying memorandum. Discussions of those facts are contained in the memorandum, but there is no citation to any evidence of record to support those discussions. Those facts not properly and specifically controverted by plaintiff are deemed admitted pursuant to D.Kan. Rule 206(c).

For purposes of these motions, the following facts are uncontroverted:

1. Plaintiff is a 27–year–old female who graduated from high school in 1980. During high school, she worked at the Sonic Drive–In and TG & Y Family Center in Russell, Kansas. Plaintiff was fired from her position at Sonic Drive–In.

2. Plaintiff moved to Wichita, Kansas, in 1980 and worked at the TG & Y store there for a short time and then changed her employment to the Dopps Houses, Inc. at the Mid–Continent Airport. After two or three months there, plaintiff moved to Denver, Colorado, and worked at a Domino's Pizza restaurant in Denver. She moved back to Wichita after approximately six months in Denver and began working at Pawnee Plastics.

3. Plaintiff was married in 1982 and moved to Dodge City, Kansas. She worked at a Gibson's Discount Store and an Alco Department Store while she lived in Dodge City. Her husband's job took them back to Wichita in early 1983. She began working at Safelite Auto Glass, but quit after three months and went to work for White Graphic Systems. She was employed at White Graphic for approximately two years before being terminated for attendance problems.

4. On September 23, 1985, plaintiff applied for a security officer position with Pinkerton's. By contract, Pinkerton's supplies security services to a number of companies in the Wichita area. At the very top of the first page on the employment application, plaintiff authorized Pinkerton's to investigate her background and was informed that her employment was contingent upon a satisfactory review of her past history.

5. Plaintiff admits her listing of prior residences on her application was incomplete and incorrect. Plaintiff represented that she had lived at her current residence since June 1982, when in fact, she had lived in Dodge City, Kansas, for some portion of that time. Plaintiff represented that she had lived at three different locations in Kansas—Goddard, Russell and Rose Hill—for the last ten years. This was not true as plaintiff had also lived at a number of addresses in Wichita, in Dodge City, and in Denver, Colorado. Plaintiff did not tell Pinkerton's that her list of prior residences was incorrect and incomplete. In her deposition, plaintiff said she chose not to list all of her prior residences because it would have taken a whole page and a complete list did not seem important to her.

6. Pinkerton's asks for a complete address list from an applicant for a security officer position, so that Pinkerton's can immediately check the applicant's police record in each city and state where he or she has lived.

7. In subpart (a) to question four on the employment application, plaintiff was asked: "Have you been hospitalized or treated during the past five years for any chronic physical ailment or mental condition which would affect your performance of duties." Plaintiff answered, "No," despite the fact that she had been hospitalized approximately six months earlier for two days after attempting suicide with an overdose of speed. When asked why she failed to reveal this to Pinkerton's, plaintiff

stated, "I didn't feel it was any of their business."

8. In subpart (b) to question four, plaintiff was asked: "Have you in the past or are you presently using any narcotic drug, controlled substance or any illegal drug?" Plaintiff answered, "No," when in fact she had used speed, marijuana, and valium. In her deposition, plaintiff said she did not reveal her prior drug use to anyone at Pinkerton's because it "would have been kind of stupid on my part. . . ."

9. Question five on the application form asked: "Have you ever been fired from an employment for cause?" Plaintiff answered, "No," even though she had been terminated for cause recently by White Graphics System and sometime earlier by Sonic Drive–In. When asked at her deposition why she did not answer this question affirmatively, plaintiff explained: "Because I thought how many people is going to hire somebody, especially a security firm, if they had been fired from another job."

10. The Pinkerton's employment application form next requested the plaintiff to list all periods of employment, unemployment, education or military service for the past ten years that exceeded thirty days. Plaintiff listed five employments, covering the period from 1978 to 1983. She indicated the "death of daughter 7–83," and offered no information from that time to September 1985, as if unemployed. Plaintiff did not list White Graphics or Sonic Drive–In, both positions where she had been terminated for cause, a position at Gibson's in Dodge City, her job in Denver, Colorado at Domino's, nor her jobs in Wichita at TG & Y, Dobbs House, and Taco Grande. Rather than five jobs in the past ten years, plaintiff had actually worked at twelve different jobs.

11. At the same time she completed the application form and was interviewed, she also filled out a form entitled "Employee Record." Plaintiff signed the following statement on that form: "I Donna Churchman understand that failure to answer all questions, or any misrepresentation by omission or concealment, or by misleading, false, or partial answer(s), will serve as a basis for termination of employment."

12. Defendant Pinkerton's has consistently terminated employees who have been discovered to have materially falsified their employment application.

13. Plaintiff provided Pinkerton's with an incomplete and misleading history of her prior employment and residences. She gave false answers to questions about drug use and mental health. She completely misrepresented ever being terminated for cause.

14. If Pinkerton's had fully known of the plaintiff's complete employment and personal history at the time of her application, the plaintiff would not have been considered for employment and would not have been hired in 1985.

15. If Pinkerton's had learned during her employment of plaintiff's multiple falsifications on her application, plaintiff would have been promptly terminated from her position as security officer.

16. Plaintiff was hired by Pinkerton's as a part-time security officer. She was assigned to Southwestern Bell until her transfer to Derby on or about March 26, 1986. While at Derby, plaintiff says she was the victim of sexual harassment. Plaintiff has testified to these events and their sequence. (The court will only summarize that testimony as it is not particularly relevant in deciding the motions). In April of 1986, Holtzinger, a Derby employee, sexually propositioned her at the guardhouse several times and visited her home on two occasions. When plaintiff asked Marty Martin, the head of Derby security, to do something about this, Martin spoke to Holtzinger and told him to stay away from the plaintiff's guard post. Shortly before Martin left Derby for other employment, Holtzinger began visiting plaintiff again at the guardshack. On one occasion, Holtzinger pushed plaintiff up against the wall until another employee happened to come through the gate. Holtzinger returned later the same day to the guardshack and exposed himself to plaintiff. Several weeks later, Holtzinger again visited the guardshack and went into the bathroom

and called for plaintiff to stand in front of bathroom door. Plaintiff refused and left the guardshack.

The day after this last event, plaintiff repeated her complaints to her supervisors. Plaintiff was instructed to write an incident report. The plant manager investigated the matter. Holtzinger denied the plaintiff's allegations. Other than evidence showing that Holtzinger had visited the guardshack, the plant manager could not find any facts to corroborate either person's story. The plant manager did discover during his investigation that the plaintiff had fraternized with Derby employees in violation of company policy. The plant manager contacted the manager at Pinkerton's and asked him to eliminate this problem with security. The Pinkerton's manager confronted plaintiff with the alleged violations of the fraternization rule and she admitted to a relationship with a Derby employee. Plaintiff was reprimanded and transferred to Southwestern Bell, where she had worked prior to Derby. An hour before she was scheduled to report to work at Southwestern Bell, plaintiff called and said she quit as she had found a new job.

Defendants argue they are entitled to summary judgment on the basis of the *Summers* decision even assuming the plaintiff had been subject to sexual harassment in her employment. They insist plaintiff omitted material information from her employment history and personal history which if known by Pinkerton's would have resulted in her being denied employment or if discovered later would have resulted in her immediate termination.

In *Summers,* the plaintiff alleged he was wrongfully discharged from his position as field claims representative due to his age and religion. In preparing for trial, almost four years after plaintiff's discharge, the defendant examined the plaintiff's records and discovered over 150 instances where plaintiff had falsified records. Armed with this evidence, defendant moved for summary judgment arguing that, while the evidence may not be relevant to showing why plaintiff was discharged, it should be con-

sidered in deciding what relief, if any, is available to the plaintiff. The trial court granted summary judgment for defendant, and the Tenth Circuit affirmed.

The Tenth Circuit understood the defendant to be arguing that because of plaintiff's pervasive misconduct, which was not discovered until long after the plaintiff was discharged, he is barred from any relief. 864 F.2d at 705. In its discussion of the law, the circuit court first made clear that this evidence does not relate to the *McDonnell Douglas* approach nor the reasons for the plaintiff's discharge. 864 F.2d at 704–05. The court then discussed a number of cases making the point that such evidence of misconduct would show the plaintiff was not entitled to any relief as he was not qualified for the job and would not have been hired or would have been terminated if the truth had been known. In order to reach the ultimate question presented by such evidence, is the plaintiff entitled to any relief, the court said it must be assumed the defendant acted in part on an unlawful, discriminatory motive. 864 F.2d at 708. The court then held:

> To argue, as Summers does, that this after-acquired evidence should be ignored is utterly unrealistic. The present case is akin to the hypothetical wherein a company doctor is fired because of his age, race, religion, and sex and the company, in defending a civil rights action, thereafter discovers that the discharged employee was not a "doctor." In our view, the masquerading doctor would be entitled to no relief, and Summers is in no better position.

864 F.2d at 708. Because the plaintiff did not deny any of the falsifications and had been warned that such action could result in discharge, the Tenth Circuit agreed this was a case appropriate for summary judgment.

The *Summers* decision has been applied by two district courts in the Tenth Circuit and cited by at least one circuit court. The Seventh Circuit in *Smith v. General Scanning, Inc.,* 876 F.2d 1315, 1319 (7th Cir. 1989), echoed the holding in *Summers* that after-acquired evidence of resume fraud is

not relevant under the *McDonnell Douglas* scheme but could be highly relevant as to the availability of relief. "[I]t would hardly make sense to order Smith reinstated to a job which he lied to get and from which he properly could be discharged for that lie." 876 F.2d at 1319 n. 2.

Judge Kelly had the opportunity to apply the *Summers* decision in the case of *Mathis v. Boeing Military Airplane Co.*, 719 F.Supp. 991 (D.Kan.1989). Plaintiff alleged harassment at the workplace and unlawful denial of terms and conditions of employment due to her race and sex, and she further alleged retaliatory discharge for filing a discrimination complaint. More than a year after her termination, the defendant discovered that plaintiff failed to disclose on her employment application one felony conviction for fraud and her employment history with three federal agencies, all of which had terminated her for cause. Judge Kelly rejected plaintiff's attempt to distinguish *Summers* on the degree of misconduct, noting:

> In the instant case, material omissions were made by plaintiff on the employment application. They were material for the simple reason that defendant relied upon such omissions in hiring plaintiff. Additionally, the obvious difference in the number of falsifications has little impact on the level of wrongdoing in the present case. In *Summers*, the 150 falsifications were directly related to the employee's work. By the same token, plaintiff's omission of her unfavorable work record is directly related to her employment.

719 F.Supp. at 994–95. In other words, summary judgment is appropriate where the material omissions are directly related to measuring a candidate for employment and were relied upon in the hiring decision.

Finally, the rationale from *Summers* was called upon in the case of *O'Driscoll v. Hercules*, 745 F.Supp. 656 (D.Utah 1990). Plaintiff alleged her termination violated the Age Discrimination in Employment Act and Title VII. During preparation for trial, the defendant discovered that the plaintiff on her employment application had misrepresented her age, the age of her children, the year of her high school graduation, and the fact that she had never previously applied for work with defendant. The plaintiff opposed summary judgment arguing the misrepresentations were not serious enough to sustain the *Summers* holding. The court refused to apply any certain threshold in favor of weighing a combination of subjective and objective factors:

> O'Driscoll's contention that an employee's misconduct must, as a threshold matter, be "serious and pervasive" before *Summers* applies is without merit. The "serious and pervasive" nature of an employee's misconduct, however, is not excluded from the *Summers* analysis entirely. An employer must show that misconduct was such that an employee would have been terminated had the employer known of the misconduct before or at the time of termination. This requirement prevents an employer from combing an employee's file after a discriminatory termination to discover minor, trivial or technical infractions for use in a *Summers* defense. On this motion for summary judgment Hercules must show that as a matter of law O'Driscoll would have been terminated had the company known of her misconduct. While there was no serious question in *Summers* that the employee would have been terminated if the employer had known of the employee's misconduct, the question is a closer one in the present case.

745 F.Supp. at 659. The employer submitted affidavits to the effect that plaintiff would have been terminated had it known of the misrepresentations. The plaintiff called the affidavits "self serving," but the court saw them as unrebutted evidence of what reasonable management would do under the circumstances. The plaintiff also attempted to show that her termination for these misrepresentations was not consistent with company policy and was not consistent with the punishment levied for different infractions by other employees. The court was unable to make any inferences from such evidence to cast doubt on the

defendant's statement that plaintiff would have been promptly terminated had the misrepresentations been discovered.

Drawing from the holdings and facts in each of these cases, the court concludes defendants here are entitled to summary judgment on plaintiff's Title VII claims. Plaintiff has wholly failed to present any evidence to rebut the statements of Pinkerton's representatives that plaintiff would not have been hired if she had truthfully completed the employment application and that plaintiff would have been terminated upon the discovery of the material omissions and falsities. The misrepresentations here are directly relevant to the hiring decision. They tend to show instability in not only plaintiff's employment history but also her personal life. The importance of any previous terminations for cause and prior drug use in an employer's hiring decision cannot be underestimated, particularly where the employer is hiring for a security officer position. As shown in her deposition testimony, plaintiff fully appreciated the significance of disclosing those facts and the likely adverse consequences if she did disclose them. The uncontroverted evidence of record establishes that a reasonable employer in the business of providing security services would not have hired plaintiff or would have terminated her after discovering the true facts of her employment and personal history.

Plaintiff attempts to escape the effect of these misrepresentations by breaking down the questions on the application form in such a way as to make her answers technically correct. These proffered interpretations avoid any reasonable reading of the questions. More importantly, they are inconsistent with plaintiff's own deposition testimony where she either volunteered most of the omitted information after being asked whether everything on the application was true and correct as of the time it was completed or she admitted her answer was incomplete or incorrect. The court grants defendants' motions for summary judgment on plaintiff's Title VII claims.

Defendants levy a number of attacks on plaintiff's pendent common-law claims.

Pendent jurisdiction over the remaining state claims is one of discretion. *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). Pendent jurisdiction is not to be exercised when the federal law claim is insubstantial. *Carey v. Continental Airlines, Inc.,* 823 F.2d 1402, 1404 (10th Cir.1987). Judge Theis writing for the Tenth Circuit recently had this to say about exercising pendent jurisdiction when the federal law claims have been dismissed:

> If the federal claim is dismissed before trial, even though not insubstantial in the jurisdictional sense, the state law claim will generally be dismissed as well. Notions of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary. The district court has discretion to try state claims in the absence of any triable federal claims; however, that discretion should be exercised in those cases in which, given the nature and extent of pretrial proceedings, judicial economy, convenience, and fairness would be served by retaining jurisdiction.

*Thatcher Enterprises v. Cache County Corp.,* 902 F.2d 1472, 1478 (10th Cir.1990). In the instant case, the parties agreed to stay discovery pending decision of their dispositive motions. Therefore, the pretrial proceedings have been limited and almost entirely directed to the disposition by motion of the Title VII claims. The court can find no compelling reason for retaining jurisdiction over the state law claims.

IT IS THEREFORE ORDERED that Pinkerton's motions for summary judgment (Dk. 64 and 68) and Derby's motions for summary judgment (Dk. 66 and 71) are granted as to plaintiff's Title VII claims.

IT IS FURTHER ORDERED that plaintiff's remaining state claims are dismissed without prejudice.