**Heather VAN DEURSEN, Plaintiff,**

**v.**

**UNITED STATES TOBACCO SALES AND MARKETING COMPANY INC. (USTS & M), a corporation; and Stephen Danielski, an individual, Defendants.**

Civ. A. No. 93–K–215.

United States District Court,
D. Colorado.

Dec. 16, 1993.

Betty Cox Bechtel, Dufford, Waldeck, Milburn & Krohn, Grand Junction, CO, for plaintiff.

William R. Gray, Buchanan, Gray, Purvis & Schuetze, Boulder, CO, for defendants.

## MEMORANDUM OPINION AND ORDER

KANE, Senior District Judge.

Plaintiff Heather Van Deursen commenced this action in state court against the defendants United States Tobacco Sales and Marketing Co., Inc. ("USTS & M") and Stephen Danielski (USTS & M's Division Manager) (collectively "defendants"), asserting claims for: (1) sexual discrimination and (2) retaliation (both under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–16, as amended) and (3) defamation. Defendants removed the action and since have filed a motion for summary judgment, arguing that Van Deursen's claims are barred by the rule laid down in *V. Ray Summers v. State Farm Mutual Automobile Insurance Company*, 864 F.2d 700 (10th Cir.1988).

### I. *Factual Background*

The following facts are undisputed. USTS & M is engaged in the field of sales and marketing of smokeless tobacco products to adult consumers. Many of USTS & M's functions are carried out by consumer marketing representatives ("CMRs"). CMRs are salaried employees who work in the field, as opposed to an office. UST & M provides its CMRs with training, a vehicle, $1500 for purchase of company product with which to stock their company car and perform product servicing at retail outlets, and a book of fifty-two checks. These checks are drawn on a UTS & M account. CMRs are authorized to write one check to themselves each week to reimburse expenses they incur in their work.

On July 25, 1989, Van Deursen completed a pre-printed employment application form for a CMR position with UTS & M. Under "Employment History," Van Deursen stated that her third most recent employer was Circle K, which had employed her from May 1982 to June 1984. In the box provided for "Reason for Leaving," she wrote "pay cut." The employment application form states above Van Deursen's signature: "It is understood and agreed that the applicant's employment is predicated upon the truthfulness of the statements herein contained." Van Deursen interviewed for the position with defendant Stephen Danielski who reviewed her employment application. In the interviewing process, neither Van Deursen nor Danielski discussed the reason for her leaving the employ of Circle K. Van Deursen was employed as a CMR for USTS & M from September 11, 1989 until January 7, 1992, when she was terminated for alleged misappropriation of company funds and for failure to follow instructions from her immediate supervisor.

Thereafter, Van Deursen filed this lawsuit. Defendants assert that during Van Deursen's deposition they learned that she was fired from her position as assistant manager at Circle K for violating Circle K's cash control procedures (Defs.' Mot.Summ.J.Ex. B, Tr. Van Deursen Depo. at 29–30.) Circle K gave Van Deursen no other reason for her termination other than that she had too much cash in her upper drawer. (*Id.* at 36.) Defendants further assert that during trial preparation, a review of Van Deursen's expense reports (accounting for USTS & M's tobacco products in the field) disclosed false reporting of her own activities and proved that she had misappropriated USTS & M's funds. (*Id.* Ex. C., Aff. Milano ¶¶ 15–17.) Defendants argue that this subsequently discovered information entitles them to summary judgment under the *Summers* doctrine.

### II. *Summary Judgment Standard*

Summary judgment is proper if the pleadings, depositions and affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The opposing party may not rest upon mere allegations or denials in the pleadings but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). An issue of fact is "genuine" if the evidence is significantly probative or more than merely colorable such that a jury could reasonably return a verdict for the nonmoving party. *Id.,* 477 U.S. at 248, 106 S.Ct. at 2510. Though a court should be cautious to grant summary judgment in a discrimination case when intent is at issue, such motions are useful to weed out those claims and cases obviously

lacking merit. *Summers*, 864 F.2d at 709. Plaintiff must come forth with specific facts to show a genuine issue of material fact; mere assertions or conjecture as to intent or pretext is not enough to survive summary judgment. *Branson v. Price River Coal Co.*, 853 F.2d 768, 771–72 (10th Cir.1988).

### III. *Title VII Claims*

Defendants deny that any sexual discrimination or retaliation ever took place as alleged by Van Deursen. Moreover, defendants contend that even if there had been such discrimination and retaliation, Van Deursen is not entitled to any relief on her federal discriminatory discharge and retaliation claims since the Tenth Circuit's decision in *Summers* dictates summary judgment in defendants' favor. Defendants argue that USTS & M would not have hired Van Deursen had she not misrepresented the fact that she had been fired from her previous employment with Circle K. In addition, defendants argue that Van Deursen's alleged post-employment misconduct would have resulted in her termination had they previously discovered it.

In *Summers*, the plaintiff ("Summers") was suspended without pay for two weeks for falsifying insurance documents. After Summers returned to work, his employer warned him that further falsifications would result in termination. Some months later, Summers was terminated allegedly for reasons unrelated to the original falsifications. Summers filed suit against his employer alleging age discrimination. During pretrial discovery the employer uncovered 150 new cases in which Summers had falsified documents, eighteen of which occurred after Summers returned from suspension. The employer moved for summary judgment on the grounds that, even assuming discriminatory termination, Summers was not entitled to relief. The employer contended that had it known before termination the facts which it subsequently learned, it would have discharged Summers on the independent basis of such facts. The Tenth Circuit affirmed the district court's summary judgment ruling in favor of the employer, reasoning, "while such after-acquired evidence cannot be said

to have been a 'cause' for Summers' discharge in 1982, it is relevant to Summers' claim of 'injury,' and does itself preclude the grant of any present relief or remedy to Summers." *Summers*, 864 F.2d at 708.

Subsequent decisions within the Tenth Circuit considering the effect of an employee's misrepresentations on employment applications have applied *Summers* to reach similar results. *See, e.g., Agbor v. Mountain Fuel Supply Co.*, 810 F.Supp. 1247, 1253 (D.Utah 1993) (misstatement of citizenship status on employment application precluded Title VII relief); *Bonger v. American Water Works*, 789 F.Supp. 1102, 1107 (D.Colo.1992) (misrepresentation in resume that plaintiff had college degree precluded Title VII claim); *Churchman v. Pinkerton's Inc.*, 756 F.Supp. 515, 519–21 (D.Kan.1991) (omissions of employment and personal history from employment application precluded Title VII sexual harassment claim); *O'Driscoll v. Hercules, Inc.*, 745 F.Supp. 656, 659–60 (D.Utah 1990) (misrepresentation of age on pre-employment application and examination precluded age discrimination claim); *Mathis v. Boeing Military Airplane Co.*, 719 F.Supp. 991, 994–95 (D.Kan.1989) (failure to provide complete information on employment application regarding employment history and felony conviction precluded racial and sexual discrimination claims under Title VII).

Van Deursen disputes the applicability of *Summers* on several grounds. First she disputes defendants' characterization of her statement that her "reason for leaving" Circle K was a "pay cut" as a misrepresentation. In her affidavit, Van Deursen asserts that "pay cut" "was an accurate synopsis of the circumstances surrounding my departure from Circle K," (Pl.'s Br.Opp'n Mot.Summ. J.Ex. 1, Aff. ¶ 5,) and that, had Danielski questioned her about it in her interview, she would have explained the following circumstances. (*Id.* ¶ 7.) She maintains that during her last week of employment at Circle K she was told by the new supervisor that she would have to take a pay cut since as assistant manager she was earning more than the manager. (*Id.* ¶ 7). Van Deursen said that she did not want to work for reduced pay. (*Id.*) She continued to work, however, and, a

few days later, the new supervisor told her that she had too much cash in her drawer and terminated her employment. (*Id.*) Van Deursen maintains that the amount of cash in her drawer was no more than that which she had routinely kept for two years and she was not aware of any policy which she was violating. (*Id.*) She then states that she believes that she was terminated "because of the pay cut dispute." (*Id.*) A review of Van Deursen's deposition testimony reveals, however, that this belief is speculation on her part, unsupported by any information given to her at the time of her firing or thereafter.[1]

■ It is an undisputed fact that Van Deursen was terminated by Circle K. Further, Van Deursen has not rebutted the affidavits of three USTS & M employees that had she correctly stated that she had been terminated by Circle K, she would not have been hired by USTS & M and that she would have been terminated had USTS & M learned the facts of her prior termination while she was still in its employ. (*See* Defs.' Mot.Summ.J.Ex. C., Aff. Milano ¶¶ 11–14; *Id.* Ex. D., Aff. Collins ¶¶ 4–5; *Id.*, Ex. E., Aff. Danielski ¶¶ 2, 4.) Van Deursen, in her opposition, "disputes Defendants' contention that this representation was material to Defendants' decision to hire her or that Defendants would have fired Plaintiff if they had been aware of the details of her departure from Circle K." (Br.Opp'n Defs.' Mot. Summ.J. at 3.) Van Deursen has not come forth with specific facts to show a genuine issue of material fact. Her mere assertion in this regard is inadequate to raise an issue of fact for trial. Fed.R.Civ.P. 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *Shapolia v. Los Alamos Nat'l Lab.,* 992 F.2d 1033, 1039 (10th Cir.1993).

Van Deursen attempts to rely on *DeVoe v. Medi–Dyn, Inc.,* 782 F.Supp. 546, 552–553 (D.Kan.1992) in support of her argument that her misrepresentation was not material to USTS & M's decision to hire her and that USTS & M would not have fired her had it been aware that she had been terminated by Circle K. In that Title VII case, the employer sought summary judgment based on plaintiff's failure to disclose certain credit problems and personal problems he was experiencing. The employer argued that it would not have hired plaintiff had it known of these problems at the time. The court rejected the motion on "[t]he critical principle recognized by *Summers, Churchman* and *Mathis* ... that the employee's misrepresentations must be *material* to the employment decision." *Id.* at 552. In the instant case, as reflected in the employment application and the affidavits submitted by defendants, Van Deursen's misrepresentation was material to the employment decision because USTS & M relied upon it in hiring her. *See Mathis,* 719 F.Supp. at 994–95.

Van Deursen further relies on *Punahele v. United Airlines, Inc.,* 756 F.Supp. 487, 490–491 (D.Colo.1991). The facts of that case are distinguishable from those before ne. In *Punahele,* the court found that there was a genuine dispute of fact as to whether the plaintiff was ever asked about his prior record for tardiness and therefore denied sum-

---

1. The following are relevant excerpts from Van Deursen's Deposition testimony:

   Q. So [the Circle K job] was a job that you quit, as opposed to being fired?
   A. I was fired.
   Q. You were fired? Okay. What did you understand the reasons were?
   A. I had too much money in my drawer. (Defs.' Mot.Summ.J.Ex. B, Tr. Van Deursen Depo. at 29.)
   Q. So your recollection is that you were fired from the job because of a violation of some cash control procedures that they had in place in the store, but that you had never been informed about those.
   A. Yes.
   Q. Did you complain to the management about the fact that you were being fired for violating a policy that you were not aware was in existence?
   A. I don't recall that.
   (*Id.* at 30.)
   Q. Was there any other reason given for your termination, other than the fact that you had too much cash in the upper drawer?
   A. No.
   Q. Were you given any written reason for your termination?
   A. No.
   Q. Did you ever speak to anyone in management, other than the person who terminated you, about what you perceived to be the unfairness of this firing?
   A. No.
   (*Id.* at 36–37.)

mary judgment. Here, however, there is no dispute that Van Deursen was directly asked about the reason for her leaving her prior employment at Circle K in the employment application.

■ The fact that Van Deursen may not have intended to misrepresent herself on the employment application form is not relevant to the issue of whether USTS & M would have refused to hire her had it known about her termination by Circle K. *See Agbor,* 810 F.Supp. at 1252–53. "It is ... unnecessary for the employer to prove whether the employee intended to misrepresent himself on the job application if the employer demonstrates that it would not have hired the employee if it had known the employee's true status." *Id.* at 1253.

### IV. *Conclusion*

I conclude that, under *Summers* and its progeny, defendants' motion for summary judgment must be granted with regard to Van Deursen's Title VII claims. Van Deursen misrepresented the reasons for her leaving the employ of Circle K on her employment application with USTS & M. Defendants have offered uncontroverted evidence that USTS & M would not have hired Van Deursen if it had been aware of Van Deursen's termination by Circle K and that USTS & M would have terminated Van Deursen had it discovered this fact during her employment term. Because no issue of material fact exists on these issues, Van Deursen is precluded from relief under Title VII as a matter of law. I therefore do not reach the other grounds submitted by defendants in support of their motion.

Since I dismiss Van Deursen's claims over which I have original jurisdiction, I may decline to exercise pendent jurisdiction over her remaining state law defamation claim. 28 U.S.C. § 1367. There is no compelling reason to retain jurisdiction over this state law claim and I decline to exercise jurisdiction in this regard.