Eddie WASHINGTON, Plaintiff,

v.

LAKE COUNTY, ILLINOIS, Lake County Sheriff's Department, and Lt. Harry Frossard, Individually and as an Agent of Lake County, Illinois and of the Lake County Sheriff's Department, Defendants.

No. 88 C 8642.

United States District Court, N.D. Illinois, E.D.

March 12, 1991.

Joel S. Siegel, Arvey, Hodes, Costello & Burman, Chicago, Ill., for plaintiff.

Eddie Washington, pro se.

Alan Michael Kaplan, Daniel Playfair Field, Brydges, Riseborough, Morris, Franke & Miller, Waukegan, Ill., for defendants.

ORDER

NORGLE, District Judge.

Before the court is the summary judgment motion of defendants County of Lake (the "County") and Harry Frossard ("Frossard"). For the reasons discussed below, defendants' motion is granted.

## FACTS

Plaintiff Eddie Washington ("Washington") was employed as a jailer with the Lake County Sheriff's Office from September 12, 1986 to July 13, 1987, when he was discharged.[1] Plaintiff, who is black, alleges that during his employment with the Sheriff's Office, he was harassed and discriminated against by Frossard, one of Washington's white superior officers. Washington also claims that his discharge was brought about in large part by disparaging departmental correspondence, generated by defendant Frossard, which became part of Washington's personnel file. He asserts that the true basis for his discharge was racial animosity.

■ In his amended complaint, Washington asserts a Title VII claim against Lake County for discriminatory employment practices and a due process and equal protection claim under 42 U.S.C. § 1983 against both Lake County and Frossard, in his individual capacity. Washington seeks reinstatement and back pay pursuant to his Title VII claim, and compensatory and punitive damages pursuant to his § 1983 claim. Finally, Washington seeks compensation for allegedly damaging evaluation reports added by Frossard to his personnel file which he claims have hampered his efforts to obtain new employment.

In their motion, defendants do not challenge plaintiff's prima facie case, nor do they attempt to articulate a legitimate, non-discriminatory basis for Washington's discharge. Rather, they have moved for summary judgment on the grounds that Washington is entitled to no relief on his claims. Defendants argue that even assuming, without admitting, that Washington was unlawfully discriminated against and fired, he was never entitled to his job in the first instance and therefore is entitled to no relief. This argument is premised upon defendants' assertion that Washington's employment with the Sheriff's Office was obtained fraudulently because Washington had made material misrepresentations on his employment application form.

■ The undisputed facts [2] in support of defendants' position establish that Washington falsely stated on his application that he had never been convicted of an offense other than a minor traffic violation. Question number 5 on the "Personnel Data Sheet" portion of Washington's employment application with Lake County asks:

Have you ever been convicted of an offense other than a minor traffic violation? (Do not include convictions while a minor and/or convictions sealed by Court order.) If so, please state the nature of the offense(s), date(s), city and state, and disposition. A conviction record is not an automatic bar to employment and the nature, recency, and disposition of an offense will be considered only as it relates to the job for which you are apply-

---

1. According to his notice of termination, Washington was discharged for numerous alleged violations of department policy, including insubordination to command officers, misrepresenting his position as a jail officer, violating jail security, and conducting himself in a dishonorable manner. Washington was accused of this last violation shortly before his discharge, after he was taken into custody by the Waukegan Police Department for the alleged criminal sexual assault of his girlfriend. *See* Letter from Clinton O. Grinnell, attached as Exhibit 2 to Defendants' Statement of Facts. According to Washington, his girlfriend later admitted that she had lied, and dropped the charges. Amended Complaint, ¶ 11(H).

2. Although Washington attempts to dispute some of the facts asserted by defendants in their Rule 12 Statement of Facts, many of his responses are unsupported by references to affidavits, parts of the record, or other supporting evidentiary materials. *See* Washington's Response to Defendants' Statement of Facts ¶¶ 11, 12, 13, 15, and 17. (Washington admits the first 10 paragraphs of defendants' 17–paragraph statement of facts.) Under Rule 12(n) of the General the Rules of the United States District Court for the Northern District of Illinois ("Local Rules"), these unsupported responses fail to comply with the provisions of Local Rule 12(n). Consequently, defendants' corresponding statements of fact, which are properly supported with admissible evidentiary materials, are deemed admitted for the purposes of this motion. *See* Local Rule 12(n); *Skagen v. Sears, Roebuck & Co.,* 910 F.2d 1498, 1500 (7th Cir. 1990); *Bell, Boyd & Lloyd v. Tapy,* 896 F.2d 1101, 1103 (7th Cir.1990).

ing.[3]

On his application form, Washington checked the box next to this question marked "no" and wrote nothing on the blank lines appearing after the question.

At the bottom of the last page of Washington's application form is a signature clause which is offset by the word "READ" printed boldly in large print above it, and the word "IMPORTANT," printed vertically in large type and bold print on either side of it. The relevant language in this clause states:

> I agree that if any misrepresentation has been made by me or the results of such investigations are not satisfactory in the judgment of Lake County, any offer of employment may be withdrawn or my employment terminated immediately without any obligation or liability to me other than for payment, at the rate agreed upon, for services actually rendered if I had been employed.

In support of their position that Washington made material misrepresentations on his application, defendants have submitted certified copies of two convictions: a 1974 guilty plea to a charge of criminal trespass, for which Washington was sentenced to pay a fine; and a 1981 conviction for third degree assault in St. Louis. In the latter case, Washington was convicted after a three day jury trial on the merits, and received a twenty eight day jail sentence, suspended in favor of a sentence of two years probation.

The crux of defendants' summary judgment motion is that they never would have hired Washington in the first place had they been aware either that he had these two prior convictions or that he made a material misrepresentation on his application form. Washington, in turn, argues that two material fact issues preclude summary judgment: first, whether his answer to Question 5 on his application constitutes an intentional misrepresentation; and second, whether the County would have rejected Washington's application or refused to

hire him had it known of his prior convictions.

## DISCUSSION

Rule 56(c) of the Federal Rules of Civil Procedure provides that a summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A plaintiff cannot rest on mere allegations of a claim without any significant probative evidence which support his complaint. *Id.; see First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims and defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Accordingly, the nonmoving party is required to go beyond the pleadings, affidavits, depositions, answers to interrogatories and admissions on file to designate specific facts showing a genuine issue for trial. *Id.*

As noted above, defendants assert that the after-acquired evidence of Washington's convictions and the corresponding misrepresentation on his employment application preclude him from obtaining any relief to which he might otherwise be entitled under Title VII or § 1983. Defendants cite *Summers v. State Farm Mutual Automobile Insurance Co.*, 864 F.2d 700 (10th Cir. 1988) in support of their position that this after-acquired evidence provides an affirmative defense to Washington's Title VII claim. In *Summers*, an employee filed suit against a former employer under Title VII for age and religious discrimination. The

---

**3.** The court notes that this application form is a general Lake County employment form and is not specific to the Sheriff's Department or any other particular County department or position.

employee had been placed on probation for two known falsifications on insurance claims records at his former job, but was ultimately discharged for poor performance. Four years after discharging this employee, the former employer discovered 150 instances in which the employee had falsified company records. The employer argued that the 150 falsifications, unknown at the time of discharge, should be considered in determining the remedy available to the employee. The Tenth Circuit agreed with the employer, holding that "while such after-acquired evidence cannot be said to have been a 'cause' for Summers' discharge in 1982, it is relevant to Summers' claim of 'injury,' and does itself preclude the grant of any present relief or remedy to Summers." *Summers*, 864 F.2d at 708. The court reasoned that the case was: .

> akin to the hypothetical wherein a company doctor is fired because of his age, race, religion, and sex and the company, in defending a civil rights action, thereafter discovers that the discharged employee was not a "doctor." In our view, the masquerading doctor would be entitled to no relief, and Summers is in no better position.

*Id.* After finding no denial of these falsifications in Summers' deposition testimony, the Tenth Circuit affirmed the summary judgment for the defendant.

The *Summers* rationale has recently been applied in numerous district court cases, *Churchman v. Pinkerton's Inc.*, 756 F.Supp. 515 (D.Kan.1991); *Punahele v. United Air Lines, Inc.*, 756 F.Supp. 487 (D.Colo.1991); *Sweeney v. U–Haul Co.*, No. 89 C 3761, 1991 WL 1707 (N.D.Ill. January 8, 1991); *O'Driscoll v. Hercules, Inc.*, 745 F.Supp. 656 (D.Utah 1990); *Carroll v. City of Chicago*, No. 87 C 8995, 1990 WL 37631 (N.D.Ill. March 20, 1990); *Mathis v. Boeing Military Airplane Co.*, 719 F.Supp. 991

(D.Kan.1989), and has been cited favorably by the Seventh Circuit, *see Powers v. Chicago Transit Authority*, 890 F.2d 1355, 1360 (7th Cir.1989); *Smith v. General Scanning Co.*, 876 F.2d 1315, 1319, n. 2 (7th Cir.1989) (stating in dictum that "it would hardly make sense to order Smith reinstated to a job which he lied to get and from which he properly could be discharged for that lie"). The present case falls squarely within the common fact pattern of the district court cases cited above. In each of these cases, a plaintiff who had made material misrepresentations on his or her employment application was precluded from obtaining relief under Title VII from the defendant employer. Relying on the *Summers* decision, each of these cases held that the misrepresentations, though not known to the employer at the time of plaintiff's termination, established that the plaintiff was not entitled to relief.

Washington raises essentially two arguments in opposition to defendants' motion. First, he argues that he "did not knowingly make misrepresentations on his employment application," Memorandum in Opposition to Summary Judgment, pp. 4–7; and second, he argues that "[t]he County has not established that it would have rejected Washington's job application or terminated him, had it known of a prior criminal conviction." *Id.* at pp. 7–14.

Washington's first argument fails for two reasons. First, Washington's subjective intent in filling out his application form does not detract from the undisputed fact that the answer he gave to the conviction question was objectively false. Washington cannot truthfully assert that he was not convicted on two occasions and that he failed to disclose these convictions on Question 5 of his application.[4] Thus, although the intent behind Washington's misrepresentation may be relevant to the question

---

4. It is interesting to note that in his Memorandum in Opposition to Summary Judgment, Washington refuses to acknowledge his prior convictions and disingenuously implies that he may not in fact have been convicted. This memorandum states that "[d]efendants have not established that Washington was, in fact, convicted of a criminal offense" and refers to "the

attendant uncertainty of whether, in fact, Washington has a criminal conviction in his past." Memorandum in Opposition to Summary Judgment, p. 5. However, defendants have subsequently filed certified copies of Washington's two judgments of conviction. Washington has since filed no response challenging the validity of these judgments.

of whether the Sheriff's Department would have fired him for lying on his application, it is not relevant to the issue of whether the Department would have refused to hire him had they known about these convictions at the time he applied for the job.

Second, Washington's assertion that "[a]t the time I answered Question No. 5 I was not aware of any prior convictions that would require me to answer Question No. 5 in any manner other than checking the box marked 'No,'" Affidavit of Eddie Washington, ¶ 5, does not raise a *genuine* issue of material fact which would preclude summary judgment. As stated above, a dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. at 2510. The court finds as a matter of law that, in the face of the convictions as recorded, a reasonable jury could not find that Washington believed he answered question 5 on his application truthfully.

Washington's second argument—that the County has not established that it would have rejected Washington's job application or terminated him, had it known of his prior criminal conviction—also fails. Defendants have submitted admissible evidence in support of their position, i.e., two affidavits—one from Lawrence Lesza, the Superintendent of the Lake County Jail and one from Clinton O. Grinnell, the Sheriff of Lake County. In these documents, the affiants state that Washington would never have been hired by the Lake County Sheriff's Department if it had known of his prior convictions. Although plaintiff refers to these affidavits as "unsubstantiated, speculative and self-serving," Memorandum in Opposition to Summary Judgment, p. 7, the documents appear to meet the procedural requirements of Fed.R.Civ.P. 56(e) and plaintiff has not established that these affiants are not competent to testify on this issue. On the contrary, the Superintendent of the Lake County Jail and the Sheriff of Lake County appear to be in a good position to have personal knowledge of the County's hiring policies concerning an application for a jailer position with the Sheriff's Department.

The court notes that in many of the recent cases applying the *"Summers* defense," district courts have relied on such "self serving" affidavits in granting summary judgment. *See, e.g., Churchman v. Pinkerton's; O'Driscoll v. Hercules.* In *O'Driscoll,* the court granted summary judgment in favor of defendants on a Title VII claim where the defendant employer discovered that plaintiff had made misrepresentations on her application form—after they had fired her for other reasons.[5] The court stated:

> Hercules has submitted affidavits by company management personnel to the effect that O'Driscoll would have been terminated immediately if the company had known of the misrepresentations to which O'Driscoll has admitted. Plaintiff argues that these affidavits are "self serving" and should not be accepted as conclusive by the court. However, not only is this testimony unrebutted, but it simply strains credulity to accept that any reasonable management personnel would have done otherwise had they known of her misrepresentations.

745 F.Supp. at 659. Like the plaintiff in *O'Driscoll,* Washington has not offered any evidence to rebut the affidavits which it terms "self serving."

Similarly, the court finds that it strains credulity to believe that the knowledge of Washington's prior convictions—particularly the assault conviction—would not have affected the hiring decision of the Sheriff's department. Indeed, Washington's assault conviction seems particularly relevant to the position for which Washington was applying. The Sheriff's Department would have a strong interest in knowing whether an applicant for a jailer position has a propensity for violence or excessive force—particularly because this position may involve contact with prisoners and perhaps the use of weapons. *See Churchman v.*

---

**5.** On her application forms, O'Driscoll had misrepresented her age, the ages of her children, the year of her high school graduation, and the fact that she had never previously applied for work at Hercules. *O'Driscoll,* 745 F.Supp. at 659.

*Pinkerton's*, 756 F.Supp. at 521 (holding that misrepresentations regarding prior terminations for cause, drug use, and hospitalization for suicide attempt were particularly relevant to the decision of whether plaintiff would have been hired as a security officer with defendant's firm).

The court also notes that even if the Sheriff's department would not have rejected Washington's application on the basis of the convictions themselves, they may have legitimately have fired Washington merely for making a material misrepresentation (whether knowingly or not) on his job application form. As stated above, Washington agreed on his application form "that if any misrepresentation has been made by me.... any offer of employment may be withdrawn or my employment terminated immediately without any obligation or liability to me...."

For all these reasons, the court finds that plaintiff has failed to raise a genuine issue of material fact concerning defendants' motion for summary judgment on his Title VII claims.

■ Finally, the court applies the undisputed facts as discussed above to Washington's § 1983 claims against the County and against Frossard in his individual capacity. To establish either of these claims, Washington first must establish that defendants deprived him of a federally protected right. *See, e.g., Monell v. New York Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Gomez v. Toledo*, 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980). Defendants argue that Washington did not have a federally protected right to his job which he obtained under false pretenses. Defendants' cite *Kawitt v. U.S.*, 842 F.2d 951, 953 (7th Cir. 1988) for the proposition that "a job obtained by an admitted and material misrepresentation is not a property right upon which a constitutional suit can be founded." In *Kawitt*, the Seventh Circuit affirmed the dismissal of plaintiff's suit for

back pay and reinstatement to his job with the Navy where plaintiff had obtained his Naval position after misrepresenting his age on his application form. Washington attempts to distinguish *Kawitt* by arguing that "Washington clearly does not admit to any misrepresentation." Memorandum in Opposition to Summary Judgment, p. 12. However, as stated above, defendants have now established (by submitting certified copies of Washington's convictions) that Washington's answer to Question 5 on his application was objectively false. Washington's refusal to admit the obvious does not save his § 1983 action. Thus, plaintiff fails to raise a genuine issue of material fact which would preclude summary judgment on his § 1983 claim.[6]

## CONCLUSION

For all of the above reasons, defendants' motion for summary judgment is granted. Defendants' motion to strike plaintiff's requests for jury trial, compensatory and punitive damages is moot.

IT IS SO ORDERED.

---

6. Because Washington has asserted claims only under Title VII and § 1983, both of which are disposed of in this summary judgment motion, the court does not reach his assertion that he

has been damaged by inaccurate and malicious evaluations placed in his personnel file. The court notes that Washington has not alleged any independent claim based upon this accusation.