**Joseph T. AGBOR, Plaintiff,**

v.

**MOUNTAIN FUEL SUPPLY COMPANY, a Utah Corporation, Defendant.**

**No. 92–C–0343A.**

United States District Court, D. Utah, Central Division.

Jan. 21, 1993.

---

Nick H. Porterfield, Professional Legal Services, Salt Lake City, UT, for plaintiff.

Lois A. Baar, W. Mark Gavre, Michael A. Zody, Parsons, Behle & Latimer, Salt Lake City, UT, for defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

ALDON J. ANDERSON, Senior District Judge.

### I. Introduction

This matter is before the court on Defendant's Motion for Summary Judgment. Plaintiff Joseph T. Agbor ("Agbor") filed this action under Title VII of the Civil Rights Act of 1964 claiming that Defendant Mountain Fuel Supply Company ("Mountain Fuel") discriminated against him because of his race and national origin. Agbor, a black man of Nigerian descent, alleges that, while he was employed as a part-time meter reader, he was unfairly denied promotion to the positions of both a full-time meter reader and drafter. Mountain Fuel denies that it failed to promote Agbor on the basis of any improper, racially suspect, basis.

### II. Factual Background

Agbor worked for Mountain Fuel from May 1986 until April 1989 as a part-time meter reader in the Salt Lake City area. Initially, in 1986, Agbor completed an application for part-time employment with Mountain Fuel. On the application, he expressly stated that he *was* a citizen of the United States. Moreover, Agbor did not answer the following question on the application which inquired whether Agbor, as an applicant, had a "legal right to remain and work in the U.S." if he was not a citizen. Based on Agbor's representations, Mountain Fuel hired Agbor as a part-time meter reader. In fact, Agbor was *not* a United States citizen. Also, Agbor was not legally authorized to work at Mountain Fuel through his F–1 student visa when he applied for the job.[1] Mountain Fuel asserts

---

**1.** In 1986, Agbor possessed a F–1 student visa. United States immigration regulations permit-

ted Agbor to obtain off-campus employment if he received proper authorization. *See* 8 C.F.R.

that it would not have hired Agbor if it had known that he was not a U.S. citizen. Further, Mountain Fuel claims it would have terminated Agbor if it had learned that Agbor was not a U.S. citizen at any time during his employment.

Agbor worked as a part-time meter reader for several years. Agbor received "Progressing" job-performance ratings for the first two years of his employment with Mountain Fuel.[2] Agbor received a "Progressing" rating because of the excessive number of errors he made in reading meters, skipping meters, and failing to complete assignments on schedule. However, in June of 1988, Agbor received a "Commendable" rating, though his errors were "still high," according to his supervisor. Pl.['s] Dep., Ex. 4. Agbor does not dispute the validity of these job evaluations, but he asserts that any such evaluation is "inherently suspect" because the supervisors were "white, non-Nigerians."

During Agbor's employment with Mountain Fuel, Agbor verbally expressed an interest in becoming a full-time meter reader for Mountain Fuel to his supervisors. Agbor maintains that "Mountain Fuel has a de facto policy of promoting part-time meter readers to full time without the formal completion of the [job application] forms." Pl.['s] Mem. in Opp'n to Def.['s] Mot. for Summ.J. at 4. Agbor asserts, without specificity, that numerous white applicants were promoted through the "de facto" hiring policy, while Agbor was required to apply through formal channels. It is undisputed, however, that Agbor never formally applied for any full-time meter reading jobs by filling out the requisite application.

With respect to the drafting positions, Agbor filed the proper application for the positions in 1988. Several white applicants also sought the same positions. After interviewing the candidates and assessing their respective job experiences, the first drafting position was offered to a white candidate who was a full-time meter reader attending Weber State College in computer science. The white applicant possessed computer drafting skills which were required for the drafting position at Mountain Fuel. By contrast, Agbor had no prior experience in computer drafting, though he engaged in some "manual" drafting in Nigeria. Mountain Fuel offers the affidavit of a hiring supervisor attesting to the applicant's qualifications and non-discriminatory reasons for refusing to promote Agbor. Aff. of Hugh B. Tanner, Def.['s] Mot. for Summ.J., Ex. H.

Agbor applied for a second computer drafting position in late 1988. However, Mountain Fuel selected an applicant from Brigham Young University with a background in computer drafting and mathematics. Mountain Fuel has supplied an affidavit stating the qualifications of the white applicant. *Id.* The white applicant had a background in topographical computer drafting and had received "Superior" ratings for his meter reading for two years and seven months. In response, Agbor asserts that he was simply more qualified than the white applicants.

With respect to his qualifications, Agbor received an Associate Degree from Utah Technical College in 1979. Agbor also claims that he received a Bachelor of Arts degree in Urban Planning from the University of Utah in 1983.[3] Despite some experience in manual drafting, Agbor had no work experience involving computer drafting. During his work at Mountain Fuel, Agbor never received a work-quality rating above "Commendable."

§ 214.2(f)(9)(ii) and (iii) (1986). Agbor received proper authorization, as evidenced on his Form I–20 ID card. This authorization, however, expired in November of 1985. Thus, Agbor was not legally authorized to work at Mountain Fuel when he applied in May of 1986.

**2.** Mountain Fuel's job performance ratings are ranked as follows: Exceptional, Superior, Commendable, Progressing, and Provisional. *See* Def.['s] Mot. for Summ.J., Ex. G.

**3.** In his Motion for Summary Judgment, Agbor asserts that he received a B.A. degree from the University of Utah in Urban Planning in 1983. However, on his application for the part-time meter reading position at Mountain Fuel, Agbor stated that he did not finish his Bachelor of Arts in Urban Planning coursework at the University of Utah until May 1986. Agbor offers no explanation for this discrepancy. It is unclear whether Agbor actually obtained such a degree.

In February of 1989, Agbor took a leave of absence because of injuries he suffered in a car accident. Agbor's physician refused to release Agbor for work, and Agbor was eventually terminated in April of 1989. Agbor filed a discrimination charge with the Utah Anti–Discrimination Division on June 9, 1989.

### III. Legal Discussion

In order to obtain relief under Title VII of the Civil Rights Act of 1964, a plaintiff must demonstrate a discriminatory motive or intent on the part of the employer. *Coe v. Yellow Freight Sys., Inc.*, 646 F.2d 444, 448 (10th Cir.1981). To establish a prima facie case of discriminatory treatment due to the employer's failure to promote the plaintiff, the plaintiff must show that "(1) he applied for an available position; (2) he was qualified for the position; and (3) he was rejected under circumstances which gave rise to an inference of unlawful discrimination in that his failure to be hired, transferred or promoted is more likely than not based on considerations of impermissible factors." *Id.* at 448–49 (citing *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)).

In the dispute at hand, Agbor contends that (1) he applied for the available positions through formal and informal procedures; (2) he was qualified for the full-time meter reader and drafter positions; (3) Mountain Fuel refused to promote him on the basis of his race and national origin. In response, Mountain Fuel maintains that Agbor is not entitled to Title VII relief because of Agbor's misrepresentation regarding his U.S. citizenship status on his application for employment. *See Summers v. State Farm Auto. Ins. Co.*, 864 F.2d 700 (10th Cir.1988). Alternatively, Mountain Fuel disputes Agbor's contention that he applied for any available full-time meter reader positions and denies forming any promotion decisions on inappropriate factors.

### A. Standard of Review for Summary Judgment

Summary judgment will be granted when parties to a lawsuit do not dispute any material facts and judgment in favor of the moving party is appropriate as a matter of law. Fed.R.Civ.P. 56(c). A moving party may demonstrate that no material facts are disputed through "pleadings, depositions, answers to interrogatories, admissions on file, and affidavits" indicating no evidence exists to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). If the moving party satisfies this requirement, the nonmoving party must "go beyond the pleadings" and designate "specific facts showing that there is a genuine issue for trial." *Id.* at 324, 106 S.Ct. at 2553.

Furthermore, in order to create a genuine dispute of material fact that would preclude summary judgment, the nonmoving party must offer evidence "upon which a jury can properly proceed to find a verdict for the party producing it." *Anderson v. Liberty Lobby*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). In viewing the evidence presented, this court will consider the evidence in a light most favorable to Agbor, as the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (citations omitted).

### B. The Effect of Misrepresentations on Employment Application under Title VII

Prior to addressing the effect of misrepresentations in job application forms, the Tenth Circuit considered whether evidence of an employee's wrongdoing after being employed precluded the employee from seeking relief under Title VII. *Summers v. State Farm Auto. Ins. Co.*, 864 F.2d 700 (10th Cir.1988). In *Summers*, an employee ("Summers") was suspended without pay from his job for two weeks for falsifying insurance documents. After he returned to work, the employer warned Summers that any further falsifications would result in his termination. Summers was subsequently terminated for reasons unrelated to the original falsifications.

Summers filed suit against the employer alleging age discrimination. While conducting discovery prior to trial, the employer uncovered 150 new cases in which Summers had falsified insurance documents. Moreover, Summers had falsified eighteen documents after receiving the employer's warning following his return to work. The employer moved for summary judgment on the grounds that, regardless of Summers' claims, it had an independent basis for terminating Summers. The district court granted the employer's summary judgment motion.

On appeal, the Tenth Circuit affirmed. The *Summers* court reasoned that, though Summers' wrongful conduct was not a "cause" for his termination, it related directly to whether Summers had suffered any injury. *Id.* at 708. Thus, even if discriminatory treatment had occurred, Summers was not entitled to relief because Summers's misconduct after the warning provided grounds for the employer to terminate Summers. *Id.; see also East Tex. Motor Freight Sys. v. Rodriguez,* 431 U.S. 395, 403 n. 9, 97 S.Ct. 1891, 1897 n. 9, 52 L.Ed.2d 453 (1977) (determining that employer entitled to prove that employee was not injured under Title VII because employee's lack of qualifications would have prevented employee from being hired).

Subsequent decisions, considering the effect of an employee's misrepresentations on employment applications, have reached similar results following *Summers.* For example, in *O'Driscoll v. Hercules, Inc.,* 745 F.Supp. 656 (D.Utah 1990), a terminated employee ("O'Driscoll") sued her employer for age discrimination. The employer disavowed any improper motive and alleged that O'Driscoll was terminated for "serious misconduct." *Id.* at 657. While preparing for trial, the employer discovered that O'Driscoll had misrepresented her age, among other facts, on a pre-employment examination and on her employment application. In response, O'Driscoll admitted misrepresenting her age, but maintained that she did so only because she feared she would be terminated if her true age were known. In its motion for summary judgment, the employer submitted affidavits by management personnel stating the O'Driscoll would have been terminated if the company had known of her misrepresentations on her job application.

The *O'Driscoll* court, considering the uncontroverted affidavits, reasoned that "it simply strains credulity to accept that any reasonable management personnel would have done otherwise [terminate O'Driscoll] had they known of her misrepresentations." *Id.* at 659. Thus, in granting the employer's summary judgment motion, the court concluded that "there is no material question that [the employer] would have terminated O'Driscoll under these circumstances." *Id.* at 660; *see also Punahele v. United Air Lines, Inc.,* 756 F.Supp. 487, 490 (D.Colo.1991) (concluding that it is a defense to a Title VII discrimination claim that the employee would not have been hired due to misrepresentation); *Churchman v. Pinkerton's, Inc.,* 756 F.Supp. 515, 519–21 (D.Kan.1991) (finding that misrepresentations on employment application precluded Title VII sexual harassment claim).

Other Circuits have followed the reasoning expressed in the *Summers* and *O'Driscoll* decisions regarding misrepresentations on job applications. *See, e.g., Johnson v. Honeywell Info. Sys., Inc.,* 955 F.2d 409, 415 (6th Cir.1992) (denying relief under Michigan Civil Rights Act due to misstatements on job application); *Smith v. General Scanning, Inc.,* 876 F.2d 1315, 1319 (7th Cir.1989) (reasoning that evidence of resume falsification may preclude relief under Title VII); *O'Day v. McDonnell Douglas Helicopter Co.,* 784 F.Supp. 1466, 1468–69 (D.Ariz.1992) (denying Title VII relief where employer would have terminated employee due to falsifications on job application); *Washington v. Lake County, Ill.,* 762 F.Supp. 199, 202–03 (N.D.Ill.1991) (dismissing Title VII claim where plaintiff made material misrepresentations on job application).

In the case at hand, it is clear that Agbor misrepresented, or misstated, his citizenship status on the Mountain Fuel employment application form. The employment application form expressly inquired: "Are you a citizen of the United States?" *See*

Def.['s] Mot. for Summ.J., Ex. B. Agbor answered this question in the affirmative. Yet, by Agbor's admission, he was not a U.S. citizen at the time he applied for the part-time meter reader position with Mountain Fuel. Additionally, Mountain Fuel maintains that it would not have hired Agbor if it had been aware that Agbor was not a U.S. citizen, or that he lacked proper authorization to work at Mountain Fuel under his F–1 student visa. In fact, Mountain Fuel contends that it would have terminated Agbor if it had discovered either of Agbor's misrepresentations after hiring him.

In addition, Mountain Fuel argues that Agbor would have been fired if Mountain Fuel had discovered that Agbor made misrepresentations to Mountain Fuel on his employment application. The Mountain Fuel employment application expressly states: "It is understood and agreed that any misstatement made by me in this application will be sufficient cause for discharged from the Company's service." *See* Def.['s] Mot. for Summ.J., Ex. B. The prospective employee is required to sign his name immediately below this warning. Agbor signed the employment application in the appropriate space. Mountain Fuel has submitted uncontested evidence that it has a strict policy of terminating employees who misrepresent themselves to Mountain Fuel on their job applications.

In response to Mountain Fuel's position, Agbor maintains that his misstatement regarding his U.S. citizenship was a result of "confusion and misunderstanding." Pl.['s] Mem. in Opp'n to Def.['s] Mot. for Summ.J. at 9.[4] In other words, Agbor suggests that he did not "wilfully" misrepresent his citizenship status to Mountain Fuel, rather he merely "misunderstood" the citizenship question. Agbor contends that, if Mountain Fuel personnel had adequately explained what the question meant when Agbor was completing the application, he

would have answered it correctly. Also, Agbor argues that merely misrepresenting his citizenship status was not sufficiently serious to preclude relief under Title VII.

Agbor's arguments are unsupported by recent decisions considering this issue. For example, in *Washington v. Lake County, Ill.*, 762 F.Supp. 199 (N.D.Ill.1991), an employee ("Washington") filed a Title VII claim alleging that, during his employment with a local sheriff's department, white supervisors harassed and discriminated against him. In response, the sheriff's department sought summary judgment on the grounds that Washington made material misrepresentations on his employment application that permitted the employer to terminate Washington at any time. The employment application inquired: "Have you ever been convicted of an offense other than a minor traffic violation?" Washington responded that he had never been convicted of any such offense. Also, the employment application stated that the employee could be terminated for any misrepresentations on the application. In fact, Washington had separate convictions for both criminal trespass and third degree assault. The sheriff's office stated that, if it had known of Washington's prior convictions, it would not have hired him. In response, Washington argued, in part, that he did not believe he was misrepresenting himself when he answered the question.

In considering Washington's argument, the court referred to prior decisions considering the effect of misrepresentations on employment forms in Title VII claims. *Id.* at 201–02 (citations omitted). With respect to the "wilfulness" of Washington's misrepresentation, the court reasoned that, "although the intent behind Washington's misrepresentation may be relevant to the question of whether the Sheriff's Department would have fired him for lying on his application, it is not relevant to the issue of

---

**4.** Agbor suggests that his difficulty with the English language prevented him from properly answering the citizenship question. This claim is simply untenable in light of Agbor's education and experience living in the United States. Agbor received an Associates Degree from Utah Technical College in 1979. Agbor continued his education at the University of Utah and claims to have received a Bachelor of Arts degree in Urban Planning in 1983. Also, Agbor has resided in the United States for at least 10 years.

whether the Department would have refused to hire him had they known about these convictions at the time he applied for the job." *Id.* at 202–03. The sheriff's department submitted uncontroverted affidavits stating that it would not have hired Washington if he had disclosed his prior convictions. *Id.* at 203. Thus, the court concluded that the *Summers* rationale would preclude Washington's Title VII claim. *Id.* In so holding, the court granted the employer's motion for summary judgment. *Id.* at 204.

It is, therefore, unnecessary for the employer to prove whether the employee intended to misrepresent himself on the job application if the employer demonstrates that it would not have hired the employee if it had known the employee's true status. In that respect, Mountain Fuel submitted the affidavit of Louis T. Caudillo, Director of Equal Opportunity and Employee Relations for Questar Corporation,[5] which describes Mountain Fuel's hiring and advancement policies. Def.['s] Mot. for Summ.J., Ex. F. The affidavit states that Mountain Fuel has an established policy *not* to hire non-citizen job applicants without valid work authorization from the United States Immigration Service. *Id.* Mountain Fuel established this policy to ensure compliance with federal immigration law. In furtherance of that objective, Mountain Fuel would terminate any employee who violated federal immigration law. It is clear that citizenship status, or proper work authorization, is a material element of Mountain Fuel's employment decisions. *See, e.g., DeVoe v. Medi–Dyn, Inc.,* 782 F.Supp. 546, 552 (D.Kan.1992) (reasoning that, under *Summers,* "the employee's misrepresentations must be *material* to the employment decision"). Agbor has not controverted Mountain Fuel's evidence regarding its hiring policies, thereby obviating the existence of any dispute of material fact for summary judgment purposes. Thus, there is no material question that Mountain Fuel would have terminated Agbor, or refused to hire him, under these circumstances. Because Agbor cannot

maintain this action due to his misrepresentations, it is unnecessary for this court to inquire further into the remaining elements of Agbor's Title VII claim.

### IV. Decision

Under *Summers* and its progeny, Agbor's Title VII claim against Mountain Fuel should be dismissed. Agbor misrepresented his citizenship status on his employment application with Mountain Fuel. Mountain Fuel has offered uncontroverted evidence that it would not have hired Agbor if it had been aware of Agbor's citizenship status. Alternatively, Mountain Fuel would have terminated Agbor if it had discovered his citizenship status during his employment term. Because no issue of material fact exists on these issues, Agbor is precluded from relief under Title VII as a matter of law. Therefore, Mountain Fuel's Motion for Summary Judgment is GRANTED.

IT IS SO ORDERED.

---

**5.** The defendant, Mountain Fuel, is owned by Questar Company.